Calling case numbers 17-4108 and 17-4157 Sherry Wilkerson v. City of Akron OH et al. Oral argument not to exceed 15 minutes per side. Mr. Rees for the appellant. Thank you. Good morning. My name is Christopher Rees. I represent the appellants on the Terry claim. Officer Joe Dancy, now Sergeant Joe Dancy, and the appellees on the other claims, which are the deadly force claim and the deliberate indifference to medical needs. I have not reserved any of my time today. I'm going to try to take all 15 minutes because I think we have three significant subjects to cover and I want to try to touch on all three and present an argument on all three. Starting off with the Terry issue, the Terry stop, the reasonable suspicion issue in the case. Before, I wanted to touch on both prongs of the qualified immunity analysis, that is the constitutional violation prong and the clearly established law prong. With regard to the first prong, the constitutional violation prong, I don't necessarily want to spend my time reviewing the individual circumstances that confronted Sergeant Joe Dancy or Officer Joe Dancy at the scene that day, the reasonable suspicion to stop and search Rafael Thomas. I want to focus on what I think the district court and the appellee in this matter erred or misdirected in the way they analyzed it. Throughout the case law, both addressing the reasonable suspicion and probable cause, they're kind of the twin sisters, the courts have always said, you need to examine those under the totality of the circumstances test. I believe I've read the appellee's brief below and the appellee's brief on appeal and I've read the district court opinion, Judge Adams, and I think they improperly employed a divide and conquer analysis. A court's evaluation and rejection of each individual factors is an improper way to review reasonable suspicion. So what factors taken together gave the officer a reasonable suspicion? Because if you're focused on the clearly established problem, it's clearly established, obviously, that you can't pat him down without reasonable suspicion, so you end up back where you didn't want to be in this argument, which is in the facts, it seems, right? I agree that you have to look at the totality, so let's take that as a given. I think we all, so now give us what facts established that he had reasonable suspicion. Sure, I will outline those. Just to finish that final point, though, what the district court did is they, it's improper to take each one and try to attach either the subjective intent in Raphael Thomas and why he was doing one of those things, why he was nervous, why he was agitated, why he bladed his body. You can't delve into the subjective intent of Raphael Thomas in doing those. Judge Sutton wrote an opinion that I often cite in my brief that's a Hocker versus Pikesville and Judge Sutton said the subjective intent of Raphael Thomas is not at issue here, so you can't go in and say, he may have just been walking away, he may have just been nervous because he didn't like the police. And the second thing is, it's improper to attach an innocent explanation. The district court said, well, when he bladed his body, instead of facing him, when he bladed his body and moved away, maybe he was just walking away. Maybe there's an innocent explanation for that. Let me turn my hand at getting a widget, Judge Sparta's asking you to do what you're not doing. Sure. This is an interesting one, in as much as we have the dashboard tape, we've watched it, and so we can objectively see what Officer Dancy was seeing. There's nothing about the subjective intent of the person that they were going to pat down when we watch the tape. It's very hard to see where that creates reasonable suspicion. Right. Here's the circumstances. Probably one of the most significant ones is, most of the reasonable suspicion cases is the officer rolls up on the scene and it's an individual hunch he has. Officer Dancy was dispatched to the scene in response to a 19-year veteran's call to check on suspicious behavior. Officer Dancy knew Officer Vaughn. There's testimony in the record that Officer Dancy said, this isn't some first or second year officer who would have just called in on a hunch. I trusted Officer Vaughn's take on this, that he saw suspicious people, he must have engaged the suspicious people, and it didn't dispel his suspicion, and it was to the extent that he called it in to the police department. So we can definitely consider... Let me give you a hypothetical. Let's say Officer Dancy called in, and you can consider their collective knowledge. But let's say Officer Dancy told them something false. Does that change the analysis? I think Officer Vaughn... Officer Vaughn called in? Sorry, yes. No, I don't believe it does, because the state of mind... Officer Vaughn is not a defendant in this case. Officer Dancy relies on, at face value, what the nature of the call was. Two suspicious males in the neighborhood, possibly casing. They gave a description of them. I don't think he has to cross-examine, for lack of a better term. There's no duty to stop him. The way you put this is, when Dancy arrives, the question is whether anything dispelled the suspicion conveyed from Vaughn. I don't think what Vaughn conveyed was enough for a stop. They may have been casing the neighborhood. My gosh, anybody may have been casing the neighborhood. So I don't think the question is whether what Dancy saw dispelled that. It's whether what Dancy saw established it, even including what he heard from Vaughn. That's where you have to go to what some of them dashed to him. If you don't want to talk about it, you're never going to win this argument. We've seen it. Blading, seriously? You think that, what we saw, counts as you can put a label on it and say that established reasonable suspicion? I mean, they're so innocuous. There's no way for someone to do what they did without blading. So what do you think about that? One point at a time, Judge Sutton. I agree with you that Howard Vaughn would not have created a suspicion. If Howard Vaughn, if that was it, there was not reasonable suspicion to stop them. So it's not a question of whether anything's dispelled because you're not there yet. That is one of the circumstances that was in Officer Dancy's mind when he stopped his car and got out. I got a pretty reliable report of why I'm here. Now that the question starts, what do you see that we're missing? I see that Officer Dancy knows where Vaughn lives. He doesn't find these two gentlemen two or three blocks away. He finds them and it confirms Officer Vaughn that these are the two people. He just didn't find them. So now, sure, we have the two people that we don't have reasonable suspicion for. He now engages in a consensual encounter of the two individuals to find out why they're there and whether or not they have any part of this Vaughn call. And they confirm what Vaughn told them, which is they had a broken down car that confirms they were there arguably for an innocent reason and the car is now gone which is typical when you have a broken down car and a record comes against it. Well that goes full circle to take us back to fall into the trap of attaching an innocent explanation for that. What's going through Officer Dancy's mind What other explanation is there for you have a car, it breaks down a record takes it and you confirm that's what happened? I don't think Officer Dancy is an experienced officer. When people case neighborhoods they don't just say, hey what are you doing here guys? They don't say, we're casing the neighborhood. Typically they'll say, we had a broken down car But they did have a are you disputing they had a broken down car? I think they had a flat tire but I'm not sure, I don't believe that Officer, the record doesn't reflect that Officer Dancy knew they had a flat tire. But what you're saying is basically an officer calls an officer and says I have a hunch shows up, so let's put all this together shows up, they confirm what the officer called and said there was a broken down car and then he turns to walk away and that gives him reasonable suspicion No, I think Officer Dancy testified that he saw nervous and agitated responses nervous and agitated Everyone in America is nervous and agitated when they interact with a police officer Well, you know someone who has a gun might too Before we leave that point again, we've seen it So there does not appear to be any nervous and agitated conduct on tape So what are we missing on your first point of nervous and agitated? I don't think Officer Dancy was convinced at that point that they had given an explanation, a credible explanation to dispel what Officer Vaughn suspected which was they could possibly be casing the neighborhood The blaming of the body When I went to the initial case management conference on this matter, Judge Adams expressed at the outset I'm sorry, the district court expressed at the outset about the blaming of the body Understand that the blaming of the body is something that's an indicator in addition to an experienced officer that the person doesn't want to engage with you Do you do this as a regular matter? I'm sorry? Do you do this representing police officers as a regular matter? I've been doing this for 26 years and I've never heard of the word blading used ever So I'm just curious Is this a word or a concept that you are familiar with within the police community? Well I mean in the age of the internet I'm not in court to do this If you Google Have you ever had a police officer explain blading to you prior to this case? Yes sir It's human interaction, Judge McKee If someone stops me and asks me in the hallway how did the oral argument go I'm going to give them an explanation It's human nature to answer questions face to face It's not human nature to turn and blade your body It is if you're walking away In fact it's impossible to do without doing that Again Well actually you do have the possibility of walking away backwards Which is suspicious Because of that You could move that I guess maybe this plays into the qualified immunity analysis We're debating it Is it beyond debate? Officer Danzy says in my experience both in narcotics and my experience as a police officer When I ask someone Hey what are you doing here? I don't mean to turn away from the mic They start to turn and blade his body like that That indicates something that there may be something going on here It's a consensual encounter I mean that's the whole point We can't do a consensual encounter Reasonable suspicion terribly do not work if people are not allowed to walk away It can't be the rule that we have consensual encounters and because they're consensual people are allowed to walk away We can't then say when they walk away that's reasonable suspicion If they run, that's a different story If they walk away I don't know how to do this without making it unfair It would make it very unfair for the citizen that walking away proves reasonable suspicion and this was the manner of walking away and when you turn you have this split second where you're quote blading and that's just an astonishing concept that we're going to say Oh it's not that they're walking away It's that they're blading That's why it's reasonable suspicion I agree Judge The flip side of this though I try to look at these things from Officer Dancy's standpoint Quan calls it There's break-ins in the neighborhood He comes up, he's got an agitated, irritated, evasive the words he used Raphael Thomas He doesn't seem to be answering the question He's giving a vague answer According to Officer Dancy he's blading his body away There is no clearly established law that I'm aware of that dictates that at that moment Joe Dancy says Oh I'm out of here, forget it I don't care if it's the case in the neighborhood I don't care if it's all in my head It's called Terry It's as clearly established as it gets You have to have reasonable suspicion It has to be objective indicators They can't be hunches and they can't be innocuous movements and they can't be walking away So I'm not sure what you mean by it's not clearly established Well to the extent that it is clearly established I think the burden in a qualified immunity analysis was on either the appellees in this case or Maybe I'm missing something but once it's clearly established that you can't do it then we look at the facts and if the facts can be viewed two different ways it's simple, it goes to a jury I think the Family Service Association case it's cited purportedly is clearly established law Judge Sutton wrote, it's in the brief That is walking away That's a person sitting on a guardrail and the officer walks up and says hey what are you sitting on the guardrail for and he gets up and starts walking away and the officer doesn't like the disrespect and he taps him, things go sideways he's on the ground That's a hunch and a walk away I don't think that clearly establishes that in this case Officer Danzy should have turned and walked away I don't think that I have seen We're not saying he should have turned and walked away He had a new name So just lethal force are you going to talk about lethal force You said you're going to do the whole thing now Maybe you should talk about that Because back to the camera this is what's hard about these if you just focus on the dash cam account that would look great for your client but of course we have this 30-40 seconds outside the camera and I suspect that's where just tell us your position In the brief time I have Officer Danzy's position in this case is that the Rush case written by Judge McKee and the Mullins case which was in 2015, the year before Rush both dictate summary judgment in this case Raphael Thomas discharged the gun while in an encounter on the ground with Officer Danzy Why shouldn't he, as he walked away before he shot demand that he stop warn him, I'm going to shoot you if you don't stop Officer Danzy describes that he was fighting, he just had a bullet that he heard We're not allowed to look at it that way The other officer says it came up it was accidental and while he was on the ground so we have to adopt that interpretation of what happened Well, that's the appellee's position in this case I'm reluctant and I think the District Court was correct in saying that I don't think Ed Stewart, the other officer's testimony about what he perceived while the fight was going on on the ground, I don't think that's relevant I don't think that factors in This is all about whether Officer Joe Danzy perceived an imminent threat physical harm to himself Ed Stewart tried to grab Raphael Thomas he didn't even think he had a gun Maybe I'm not understanding what's going on here but just hypothetically, the other fellow who was with Thomas I know he doesn't testify If he testified and said, no wait a second Danzy and Thomas were struggling with the gun the gun just discharged while Thomas was on the ground In summary judgment when you're trying to win as a matter of law against Wilkerson we would have to accept that witness's account So I'm just making the point the other officer's account is like that witness's in the sense that it helps Wilkerson we've got to construe the evidence Wilkerson's way before we rule as a matter of law against her Judge, if that testimony was in the record I think I would probably have to give your point some considerable thought Jesse Gray's testimony is not in the record You're not following what I'm saying I'm saying had there been that witness it would be analogous to the other officer's testimony that the gun just discharged while Thomas was on the ground So that's the most favorable account from Wilkerson's perspective That's all I'm saying That's the one we credit Not Danzy's account that the two were struggling with the gun in the air  when it was fired Again, I guess by following your question, Judge Jesse Gray's testimony is not there I think you started off It's alright This happens all the time Alright, I think we're good Thank you very much We'll hear from the other side Thank you very much Good morning My name is Jeremy Torr I'm here on behalf of Plaintiff Athlete Sherry Wilkerson I'd like to begin by discussing the deadly force Your Honor, the law is clearly established has been clearly established for many years that an officer may not use deadly force to shoot a fleeing suspect in the back I apologize without a basis for believing that that individual poses an immediate threat What about the fact that he has a gun and the gun went off? Your Honor, there is a dispute about whether Raphael Thomas had a gun in his hand as he was running away If you look at the dash cam video footage I've looked at it numerous times I can't see a gun in either hand In addition, officers I don't know how you can say that's not a fair inference That's the only inference we have Well, I asked Officer Stewart at deposition, did you see a gun in Raphael's hand at the moment he was shot? His answer was, no I did not. So what are you saying that the police officers then picked up the gun from where the scuffle was and planted it on him? I'm not suggesting the officer planted the gun. What is possible How does it get from point A to point B? One possibility Your Honor, is that during the scuffle, the gun goes off and it ends up on the grass and Danzy grabs the gun quickly. It's a very small gun It can be palmed. Grabs the gun quickly and then runs after Raphael Thomas and shoots him and as he goes up to handcuff Raphael Thomas he lays the gun down next to him I'm not suggesting that was a plant I'm just suggesting that's a way and in fact, Your Honor, the officer Danzy's DNA is found on the gun so that is consistent with his palming and bringing it next to Raphael Thomas It's also consistent with his testimony about how the gun discharged It is. It is, Your Honor Did you make this argument that he picks up the gun in one hand he's got the other gun he's got his officer's gun in the other hand and he runs after him and shoots him and drops the gun? Did you make that argument below? I don't believe I made that argument below You didn't make it in these briefs I don't think you did. I did Really? Okay, I'll go back and look I missed something Yes, I believe it was in the second brief But that issue, Your Honor is not dispositive of whether deadly force was justified because this court has repeatedly said just because a suspect possesses a weapon even if he's committed a felonious assault prior to the segment in time when deadly force is used, he can fire the weapon and the weapon can fire Yes, that's correct And the interpretation of facts most favorable to Ms. Wilkerson is that the gun goes off inadvertently Let me ask you this because this all comes back to Tennessee vs. Garner and what that says is that you can use deadly force if necessary to prevent escape and that seems to be what was happening here. Now, I know it's politically correct to say you can't shoot somebody I get all that but how do we differentiate what happened here from what Tennessee vs. Garner seems to say is permissible My reading of Tennessee vs. Garner is that it held that the fleeing felon rule was unconstitutional in other words, you cannot use deadly force to prevent a felon from getting away Tennessee vs. Garner establishes the immediacy requirement that at the moment deadly force is used there must be an immediate threat of serious bodily harm Well, I agree with him the sentence starts out with if the suspect threatens the officer with a weapon I get that in context but here, I didn't even mention I didn't bother to read that part because here you have the scuffle and a gun that Dancy had goes off. It seemed to be that pretty obviously satisfied the first part of Garner So once that happens then you're saying, oh no harm no foul the guy can just run even though we think that he has a gun and he might turn around and fire Well, might. That's a possibility So they have to actually wait then for him to turn around after having fired the gun one time. You have to wait for him to turn around a second time and point it at the officers before you can engage again There has to be an immediate threat Even though it would be then impossible to counter that threat because there simply wouldn't be enough time then to shoot It doesn't seem to me that cases say that as unappealing as this law may be It doesn't seem like it That's reasonable Well, the immediacy rule coupled with the segmentation rule that this court consistently applies examines the moment in time the second in time when deadly force is used How far away was the actual deadly shooting from where the scuffle occurred Do you know offhand how many? I would estimate that as the distance between you and me right now maybe 15 to 20 feet That's an estimate you can see on the dash cam video footage What's the best case for us to look at that would help you? The things that I think you mean here are I get the idea that if you look just at the dash cam it does seem like it would have been great if he said stop or I'm going to shoot That would have been wonderful if he said it but these facts that happened before that before we see this come in front of us that I think perhaps make it understandable why the officer did what he did So you have to have a gun goes off It's weird to think a gun would go off even if it's accidental without the gun being in the individual's hand That seems odd to me that it's in his pocket and suddenly going off during the scuffle I suppose it's possible but it sure seems fair for an officer to assume the gun was in the person's hand So the gun goes off They've had this scuffle He's able to take on two officers so he's a strong man He's running now The gun's gone off once It's true, he could just be running away and never going to shoot again but is there a case with that kind of situation where the court said no, you couldn't use legal force Well, I would like The answer is yes There are cases The best one Not a series of cases If there's one like this Well, there's not a case with the exact same set of facts as there ever is But the Bouges case in 2007 So that's where the gun discharges A gun The officer's version of the facts is that yes, the gun discharges But the version more favorable to the individual who shot is that no, the gun did not go off during the scuffle We have to accept that the gun went off here, so I don't think that's a helpful case Right, and the Littlejohn case from 2017 That was an armed robbery where a gun was brandished Admittedly, a gun was not discharged but a gun was brandished and the officer claimed that at the moment he wrestled the suspect down and the suspect started to flee and was shot in the back the officer believed that he had a gun on him and this court said it didn't matter that he had a gun on him when he was running away because there wasn't an immediate threat at the moment that shots were fired How about a case where the gun was discharged? The Dickerson case involves the use of a firearm the possession of a firearm but the suspect doesn't point the firearm at any officer or at anyone and this court said you don't have an immediate threat So is the gun fired at Dickerson? My recollection of that case is that shots were fired prior to the police officers arriving on the scene That's my recollection Well anyway, you can understand what we think is a pretty significant fact Understandable, but I think what's important to appreciate about the off-camera scuffle is that there are wildly divergent accounts of what happened but what is consistent between both Officer Danzy's testimony and Officer Stewart's testimony is that at no point during this scuffle does Raphael Thomas attack or punch or attempt to harm either officer. He's merely flailing his arms trying to get free He did get the gun Well, likely the gun fell out I would imagine it was in his jacket pocket Somebody had to have their finger on the trigger to make it go off It potentially fell out of his jacket He reached for it and inadvertently pulled the trigger while it was on the grass underneath him which explains Officer Stewart's testimony that it sounded muffled It sounded like it was coming from underneath Raphael Thomas Does Danzy have to know all that at the time he shoots or could he assume this guy had a gun, he got it out would it be a reasonable assumption and it discharged because it's the officers and when an officer that was just in a scuffle and a gun discharges and it's not his gun it's Thomas' gun and he starts running away I think the best answer to that question is to reference Officer Stewart's testimony I asked him, did you at any point perceive Raphael Thomas to be a serious threat to you or anyone else and he said no Yes there was a scuffle Yes Raphael Thomas would not comply and he was resisting and trying to flee but Officer Stewart said at no point was he trying to attack me or my partner or point a gun at either of us and that version of facts has to be credited for purposes of this appeal What happened to was it Gray the other person that was in the neighborhood, what happened to him He went to West Virginia and was never to be seen or heard from again But the interesting part of your argument I think is that if you credit Stewart's testimony that he didn't see the gun pointed at either of the officers it's undisputed that the gun went off, it's undisputed that when Stewart tried to grab him the answer he yells Stu he's got a gun So you seem to say that there's a scuffle, the gun goes off and then the gun has to be pointed at the officers again after the scuffle in order to justify shooting That's the essence of the argument isn't it? Now is there a case that says that given how quickly these things unfold Well the Dickerson case is a perfect illustration of this notion and this principle that just because somebody who's reportedly very dangerous and may have engaged in felonious conduct if that gun isn't pointed or the suspect doesn't gesture in a way that would give the officer Did the gun go off in that case? In the Dickerson case? Judge Sutton was asking me about that My recollection, and don't quote me is that shots were fired prior to the police arriving on the scene But I would bring us back to the segmentation rule because the critical segment at issue here is what is captured on the dash cam and the implication of saying well there's a scuffle, a gun goes off therefore the officers can use heavy force is that it doesn't matter how far away Rafael is from the officers They can chase him down, run through the streets of that neighborhood and once they are within the line of sight they can be judged during an execution or shoot him dead That's not what the Constitution permits. The Constitution requires there be an immediate threat The immediacy requirement is, I believe, rooted in this notion Why isn't he immediacy when you turn around and shoot him? He's half naked his pants and underwear are below his buttocks he's hobbled by his pants and underwear around his thighs and knees You can see he's no threat to anybody He's just trying to get away Thighs and knees may be a slight exaggeration from what the tape shows I didn't hear you Thighs and knees may be a slight exaggeration from what the tape shows Well you can see his bare buttocks are exposed and he's struggling to pull off his pants and his underwear I'm not sure what threat he is to anyone at that moment And as Judge Sutton pointed out neither officer gave a warning to rob the autopist which was perfectly feasible here and in fact is required by Tennessee v. Gardner If we agree with you on the stop and we disagree with you on the deadly force then I assume it would go to trial only in connection with the initial encounter Would that be your objective? Were we to agree with the city on the deadly force? I think that's right So can you then argue at the trial that you still can get damages for them having shot him because that's then a foreseeable consequence of the stop or do you only have to prove that he was actually damaged by virtue of the stop and putting him on the hood of the car before he gets in the tussle? That's a good question I haven't considered what damages we would seek at trial but we can get there but I do think the entire episode would be relevant for the jury to consider because it's all part and parcel of the constitutional violation The assault and battery I just have one quick question The assault and battery under Ohio law is that based on the shooting? There are two assaults and batteries One is the stop and frisk The other is the deadly force Do you claim that in your complaint? Yes In fact regarding the assault and battery claim as it pertains to the deadly force even if this court were to find that Officer Dancy is entitled to qualified immunity on his use of deadly force I would submit that he would not be entitled to state law immunity on the assault and battery claim because it would be reckless to shoot somebody in the back as he's running away I see your time is up Thank you Your Honor Thanks to both of you for your helpful briefs We appreciate it The case will be submitted Thank you very much